Filed 1/22/25  P. v. Poole CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDRE POOLE,<br><br>    Defendant and Appellant. | A169626<br><br>(Alameda County<br>Super. Ct. No. 177413B) |

Defendant Andre Poole appeals from the trial court's resentencing of him, which occurred after our remand from a prior appeal.  We remanded to allow the trial court to exercise its recently authorized discretion under Penal Code section 12022.53, subdivision (h)[1] to consider striking, under section 1385, a firearm use enhancement, for which the court added a 25-years-to-life term to Poole's total sentence.

Convicted of murder and other charges, Poole argues we must reverse and remand because the court abused its discretion by declining to strike the enhancement under section 1385.  He contends the trial court misapplied its discretionary authority by failing to give sufficient consideration to certain mitigating factors enumerated in section 1385,

---

[1] Undesignated statutory references are to the Penal Code.

1

subdivision (c)(2), violating the letter and spirit of section 1385, and making no assessment whether striking the enhancement would pose a danger to public safety.

We disagree with Poole's contentions. We conclude he does not meet his burden of showing that the trial court's detailed explanation of its decision to keep the firearm enhancement in place was insufficient to demonstrate a concern about danger to public safety. Because the court's explanation clearly shows a careful weighing of mitigating circumstances and aggravating factors permitted under section 1385, subdivision (c), as indicated by our Supreme Court in *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*) and other case law, the trial court did not abuse its discretion.

We affirm.

## I. BACKGROUND

In 2017, a jury found Poole guilty of first degree murder (§ 187), voluntary manslaughter (§ 192), and possession of a firearm by a felon (§ 29800) for offenses he committed on January 1, 2015, when he was 24 years old. Regarding the murder, the jury found true a robbery special circumstance allegation (§ 190.2, subd. (a)(17)(A)) and a personal use of a firearm enhancement allegation (§ 12022.53) that is the subject of this appeal; regarding voluntary manslaughter, the jury found true an armed with a firearm enhancement allegation (§ 12022, subd. (a)(1)).

The trial court imposed a term of life without the possibility of parole for the first degree murder conviction, plus 25 years to life for the accompanying firearm use enhancement. It imposed consecutive determinate terms of five years and six months for the voluntary manslaughter conviction, one year for the accompanying enhancement, and eight months for the unlawful firearm possession by a felon conviction.

2

We affirmed these convictions in a 2019 unpublished opinion, except that we remanded the case for resentencing so the trial court could apply its recent, legislatively granted discretion under section 12022.53, subdivision (h) to dismiss or strike the firearm use enhancement under section 1385. (*People v. Poole* (March 28, 2019, A152439) [nonpub. opn.].) We summarized the facts underlying Poole's offenses based on surveillance video and witness testimony as follows:

"On January 1, 2015, at approximately 1:30 p.m. Andre Poole and three associates pulled into a Valero gas station in Oakland to get gas. Derrick Williams was at the gas station with his girlfriend and one of his friends selling Xanax. While passing each other's respective clans, Poole became aware that Williams was selling Xanax. Poole expressed interest in purchasing, and Williams agreed to sell Poole 20 Xanax pills. Poole returned to his vehicle to await delivery of the drugs while Williams went back to his own vehicle to count out the 20 pills.

"After counting out the pills, Williams walked across the gas station breezeway to Poole's minivan to deliver the drugs. Williams had the pills in his left hand and nothing in his right hand as he walked over to Poole. As Williams approached, Poole turned his back to Williams and reached inside his sweatshirt as though he was taking out money to purchase the pills. When Poole turned back around to face Williams, Poole had a gun in his right hand and took the pills from Williams with his left hand. Poole put the pills into his sweatshirt pocket, then reached around the back of [Williams's] neck with his left hand while still holding the gun in his right hand. Next, Poole brought his left hand down to [Williams's] chest and yanked some chains from around Williams's neck.

"Poole then lifted his gun up to [Williams's] neck and fired multiple times at close range. Williams fell to the ground as Poole continued to fire shots at him. At some point during the encounter Williams retrieved a gun from somewhere on his person and was holding it in his right hand when he was shot. Williams never raised his gun or pointed it at Poole. When Williams fell to the ground his gun fell to the ground near his feet. Williams succumbed to his injuries at the scene.

"Once Poole began firing at Williams, Poole's associate . . . and Williams's associate . . . began firing at each other across the gas station. As the gunfire continued, Poole and his friends retreated into a nearby neighborhood. Poole was arrested in Sacramento a week after the incident." (*People v. Poole*, *supra*, A152439.)

On remand from that previous appeal, Poole urged the trial court in a sentencing memorandum to strike the firearm enhancement under sections 12022.53, subdivision (h) and 1385, subdivision (a) in the interest of justice. He argued the court was required to, and should, give great weight to certain mitigating circumstances under section 1385, subdivision (c)(2). These were that multiple enhancements were alleged against him; that application of the firearm enhancement would result in a sentence of over 20 years; and that his offense was connected to childhood trauma or victimization. (§ 1385, subd. (c)(2)(B), (C) & (E).)

Poole also argued that striking the enhancement would not endanger public safety because he would still be subject to a sentence of life without the possibility of parole should the court not strike the special circumstance

4

allegation for the murder conviction[2] or, if the court did strike it, be subject to a life term and parole board reviews that ensured he would not be released if doing so posed a danger to public safety.

Poole attached to his sentencing memorandum a consultant's social history report detailing what the consultant characterized as his "adverse childhood experiences." These included "physical, emotional and sexual abuse, incarcerated parent, divorce and substance abuse." According to the consultant, "Poole is one of twelve children born to his drug addicted mother. [Poole] was born with a serious heart condition and needed surgeries all his life. Despite his fragility, [Poole] was unloved and discarded by both parents. Abused and neglected, the family was transient. [Poole] lived in motels, slept in parks, cars, and shelters. He was tossed from one family member to another. When he was a boy, he witnessed two fatal drug overdoses. To rescue him from foster care, his older sister raised five of her own and six of her siblings. As a pre-teen, [Poole] went back with his mother, who was still on drugs and failed to protect him from her boyfriend who physically abused [Poole] and sexually abused his sister. [Poole] first started stealing food, then selling drugs. He barely went to school. For most of his teenage and young adult years, Mr. Poole was active to probation and/or incarcerated. He has had few opportunities to extricate himself from his immediate surroundings which he had become a product and survivor of." (Footnote omitted.)

The People took no position as to whether or not the court should exercise its discretion.

---

[2] Poole also asked the court to strike his life without the possibility of parole sentence as cruel and unusual punishment, but does not raise this claim on appeal.

At the resentencing hearing in December 2023, the trial court declined to strike the firearm use enhancement.  It agreed with the defense characterization of the factors in mitigation.  However, the court continued, "as significant as I find those to be . . . , they simply still do not outweigh the factors that I would consider to be in aggravation that I had the opportunity to view from the 50-yard line, having presided over this trial and having dealt with sentencing.

"I mean . . . this was a robbery that started with the effort to take 20 Xanax pills that was followed by a robbery of what appeared to be a necklace around Mr. [Williams's] neck that resulted [in] Mr. Williams at least being fired at and ultimately shot at very close range.  As he fell, shots were still being fired and Mr. Poole fled from the scene.  Again, from the Court's perspective, over something incredibly trivial.

"And . . . I will concede a lot of time has passed, but I can remember watching that videotape like it was yesterday and seeing with my own two eyes how incredibly avoidable it was and how unnecessary it was for Mr. Williams to meet his demise that day.

"And as I like to mention, more than one life was ruined on that day. You take a rock, you throw it in the pond, and all of a sudden you hear the big splash but then you see all the ripples and we're seeing all the ripples.

"Mr. Poole . . . is much different than the Andre Poole who was in my department back in 2017.  He's consistently had family here.  He's got a lovely young daughter who he's hopefully getting an opportunity to get acquainted with, and so those are not things that I am unaware of.

"And I did consider as a mitigating factor the relevant youth of Mr. Poole at the time the murder was committed and the fact that compared to that day, Mr. Poole, you're a grown man today.  You look nothing like the

6

scrawny kid that was in my department. But, again, I mean what happened on this day, we can't erase it because the legislature has decided to give a court a little bit of wiggle room under 12022.53. [¶] . . . And frankly, none of the factors that were listed in that senate bill and in any of the cases that have subsequently come along has disabused this Court that it was right in the original sentence. [¶] I think its important to note that the Court has reviewed the record . . . in its entirety."

The court said its decision was consistent with two cases, *People v. Parra Martinez* (2022) 78 Cal.App.5th 317 and *People v. Ortiz* (2023) 87 Cal.App.5th 1087 (*Ortiz*), and continued, "This Court does feel that it is exercising its discretion, and by doing so, has noted that the activating[3] factors that were known to the Court at that time still outweigh what I would consider to be in this instance a heavily weighted mitigating factor that was placed in [defense counsel's] moving papers. [¶] But none of that, in the Court's opinion, outweighs the aggravating factors that existed on the date of the offense and still exist today. They haven't gone away just because the law has changed, and the Court is exercising its discretion in what I would consider a reasonable manner. . . . [¶] I will decline to strike the firearm enhancement and the original sentence as originally laid down will continue. I'm not going to move off of that." It ordered Poole remanded to prison to serve the balance of his sentence as originally imposed.

Poole filed a timely notice of appeal. The parties refer in their briefs to reversal or affirmance of "judgment" but the record does not indicate the trial court intended to enter or entered a new judgment. We did not reverse the judgment in the previous appeal either, but merely vacated the sentence

---

[3] Although the transcript states "activating," the court likely said "aggravating" given the context of its remark.

and remanded for resentencing.  Instead, the court upon remand confirmed its imposition of the original sentence, from which Poole has appealed.  The court's order is appealable as an "order made after judgment, affecting the substantial rights of the party."  (§ 1237, subd. (b).)

## II. DISCUSSION

### A. *Legal Standards*

A trial court has the discretion to dismiss a firearm use enhancement pursuant to section 12022.53, subdivision (h)[4] and section 1385.  (*People v. McDavid* (2024) 15 Cal.5th 1015, 1021).  As amended in 2021, Section 1385 now provides that a court, in exercising its discretion, "shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."  (§ 1385, subd. (c)(1), as amended by Stats. 2021, ch. 721, § 1.)

Further, the court "shall consider and afford great weight to evidence offered by the defendant to prove" the presence of certain mitigating circumstances.  (§ 1385, subd. (c)(2).)  Poole relied on three such circumstances at resentencing and again relies on them on appeal:  they are, that "[t]he current offense is connected to prior victimization or childhood trauma"; that "[t]he application of an enhancement could result in a sentence of over 20 years," and that "[m]ultiple enhancements are alleged in a single case."  (§ 1385, subd. (c)(2)(B), (C) & (E).)

The trial court may only find that prior victimization and childhood trauma were connected to the offense if "after reviewing any relevant and

---

[4] Section 12022.53, subdivision (h) provides, "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section.  The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law."

credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, medical records, or records or reports by qualified medical experts," the court concludes those factors "substantially contributed to the defendant's involvement in the commission of the offense." (§ 1385, subd. (c)(6)(A) & (B).)

By section 1385's express terms, "[p]roof of the presence of one or more of these [mitigating] circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)

In his opening brief, Poole argues that section 1385, subdivision (c) creates a rebuttable presumption in favor of striking enhancements if any of the mitigating circumstances enumerated in it apply, unless doing so would pose a danger to public safety. He also challenges the trial court's ruling as an abuse of discretion based on the court's purported "abject failure" to afford " 'great weight' " to the relevant factors, regardless of whether such a presumption controls.

As Poole acknowledges in his reply brief, after he filed his opening brief, our Supreme Court held in *Walker, supra,* 16 Cal.5th 1024, that section 1385 does *not* establish such a presumption. (*Walker,* at p. 1032.) The Court also instructed that, if a trial court "does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in furtherance of justice." (*Id.* at p. 1036.) "[I]n most cases," the court explained, " 'if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how

9

dismissal would further the interests of justice,' notwithstanding the applicability of any mitigating factors identified in subdivision (c)(2)." (*Id.* at p. 1033.) And, the court added, "if the [trial] court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Id.* at p. 1029.)

In exercising its discretion under section 1385, the trial court may consider aggravating factors such as those outlined in California Rules of Court, rule 4.421 or rule 4.410. (See *Walker*, *supra*, 16 Cal.5th at p. 1033 [citing rule 4.421, among other things, in discussing a court's discretion under § 1385, subd. (c), noting that, "notwithstanding the presence of a mitigating circumstance, the trial courts retain their discretion to impose an enhancement based on circumstances 'long deemed essential to the "furtherance of justice" inquiry' "]; see also *Ortiz*, *supra*, 87 Cal.App.5th at p. 1097 ["The language of section 1385(c)(2) . . . reflects a legislative recognition that a trial court's exercise of sentencing discretion" includes " '[g]enerally applicable sentencing principles,' " including consideration of circumstances in aggravation and mitigation, citing rule 4.410], discussed favorably in *Walker*, at pp. 1035–1038.)

We review a trial court's sentencing decisions for abuse of discretion (*People v. Carmony* (2004) 33 Cal.4th 367, 376) (*Carmony*), which means we review court findings of fact for substantial evidence and conclusions of law de novo, and reverse a court's application of the law to the facts only if arbitrary and capricious. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th

10

706, 711–712, fn. omitted.)  The party attacking the sentence has the burden to show an abuse of discretion; otherwise, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.  (*Carmony*, at pp. 376–377.)

## B. *The Trial Court Did Not Abuse Its Discretion*

Poole argues the trial court abused its discretion in declining to strike the firearm use enhancement "based on the trial court's abject failure to afford 'great weight' " to the three mitigating circumstances he relied on below, and because the court "plainly misunderstood, and misapplied, the dangerousness measuring stick of" section 1385, subdivision (c).  He also cites two additional mitigating circumstances—that he was relatively young at the time of the murder and that, as the court noted, he was a very different person at the time of resentencing than he was in 2017.

The People contend the only statutorily designated mitigating circumstance the trial court was required to give great weight to under section 1385, subdivision (c)(2) was the connection of Poole's prior victimization and childhood trauma to the murder.  They argue the other two statutorily designated mitigating circumstances Poole relies on do not in fact apply to his case because the court's imposition of a 25-years-to-life sentence did *not* increase his murder sentence by more than 20 years, since he was also sentenced to life without the possibility of parole, and because one of the multiple enhancements Poole cited below was in fact a special circumstance allegation, not a sentence enhancement allegation.

We need not determine which party is correct as to whether those two statutorily designated mitigating circumstances apply here because, even assuming for the sake of argument that they do apply, we conclude the trial court did not abuse its discretion.  We see no reason to resolve this dispute

11

both because Poole fails to show the court's remarks at the resentencing hearing did not demonstrate a concern for the danger to public safety posed by striking the enhancement, and because the court well supported its decision to keep the firearm enhancement in place by a careful weighing of mitigating circumstances and aggravating factors permitted under section 1385, subdivision (c).[5]

Poole contends the trial court's statement that the legislature gave it "a little bit of wiggle room under 12022.53" and its related comments indicate the court gave "no weight" to the mitigating factors he relied on under section 1385, subdivision (c)(2), that the court ignored the letter and spirit of section 1385, subdivision (c), and that the court made no assessment whether striking the enhancement would endanger public safety. These contentions are belied by the court's comments at the sentencing hearing. The court referred repeatedly to the mitigating circumstances Poole cited. It *agreed* with the defense characterization of them, and also said they were "significant" and "heavily weighted." It noted that Poole appeared to have matured since the trial, and said it had considered Poole's youth at the time of the murder. It also indicated that it had "reviewed the record . . . in its entirety."

But the court also pointedly referred to Poole shooting Williams "at very close range," noted that as Williams fell, "shots were still being fired," and considered Poole to have engaged in this brutality "over something

---

[5] We do note, however, that another enhancement sentence *was* imposed at resentencing, the one-year sentence for the armed with a firearm enhancement that accompanied Poole's voluntary manslaughter conviction. Whether this enhancement was appropriate to consider under section 1385, subdivision (c)(2)(B) is a further question we leave to another court to determine.

12

incredibly trivial," the robbery of "20 Xanax pills" and "a necklace around Mr. [Williams's] neck." It still recalled viewing some years before at Poole's trial the video of the murder, characterizing the murder as "incredibly avoidable" and "unnecessary." Only after making these remarks—from which we think it apparent that the court was concerned about the public safety threat posed by Poole in light of the callous, brutal nature of his murder of Williams—and recognizing its discretion to strike the firearm use enhancement did the court conclude that "none" of the mitigating circumstances outweighed "the aggravating factors that existed on the date of the offense and still exist today" and reject Poole's strike request.

Poole fails to establish that the trial court's explanation of its ruling insufficiently demonstrated a concern for a danger to public safety. The court was not required to state any "magic words" beyond what it said at the resentencing hearing. (See *Ortiz*, *supra,* 87 Cal.App.5th at p. 1096 [interpreting the trial court's initial statement and "detailed explanation of its reasoning" at the sentencing hearing as demonstrating that it "engaged in a holistic balancing with special emphasis on the enumerated mitigating factors" in § 1385, subd. (c)(2), citing *Carmony*, *supra*, 33 Cal.4th at pp. 376–377 [party attacking the judgment must clearly show abuse of discretion].)

Regardless of the particular form of words used to explain the exercise of discretion here, section 1385, subdivision (c) permits a trial court to decline to strike an enhancement in the face of heavily weighted mitigating circumstances without finding a danger to public safety if it is in furtherance of justice to do so. The court in *Ortiz*, *supra*, 87 Cal.App.5th 1087, a pre-*Walker* case, affirmed a trial court's declination to strike a prior strike assuming, for the sake of argument, it was subject to section 1385, subdivision (c)(2). The court rejected the contention that the mitigating

13

circumstances enumerated in section 1385 subdivision (c)(2) created a rebuttal presumption in favor of striking an enhancement. Our Supreme Court in *Walker* relied heavily on *Ortiz* in reaching this same conclusion, stating, "We conclude that the plain language of section 1385, subdivision (c)(2) contemplates that a trial court will exercise its sentencing discretion in a manner consistent with the *Ortiz* court's understanding." (*Walker*, *supra* 16 Cal.5th at p. 1029.)

In reaching its holding, the *Ortiz* court explained, "the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement. . . . [T]o require the trial court to dismiss an enhancement absent a finding that dismissal would endanger public safety would divest the trial court of its ultimate discretion under the statute to determine what is in furtherance of justice, considering all relevant factors." (*Ortiz*, *supra*, 87 Cal.App.5th at p. 1098.) It further instructed, "The language of section 1385(c)(2) as ultimately enacted also reflects a legislative recognition that a trial court's exercise of sentencing discretion involves more than a strictly binary weighing of mitigation against public safety. '[G]enerally applicable sentencing principles' relevant to a court's determination of whether dismissal is in furtherance of justice 'relat[e] to matters such as the defendant's background, character, and prospects.' (See [*People v.*] *Williams* [(1998)] 17 Cal.4th [148,] 160, fn. omitted.) Those principles require consideration of circumstances in mitigation [and aggravation] in the broader context of the recognized objectives of sentencing, which are not limited to public safety. (See Cal. Rules of Court, rule 4.410.)" (*Id.* at p. 1097.)

The trial court here expressly stated that its ruling was consistent with *Ortiz*, indicating it embraced the analysis in *Ortiz*. Consistent with

14

*Ortiz* and, as we have already discussed, *Walker*, *supra*, 16 Cal.5th at pp. 1033, 1035–1038, the trial court's reference to "aggravating factors" indicates its appropriate consideration of those aggravating factors enumerated in the California Rules of Court.

The record supports several of them. For example, it was undisputed that Poole shot Williams with a firearm after luring him into close range with the promise of a drug transaction, and the jury's finding that Poole murdered Williams in such close proximity while robbing him makes clear it found that he deliberately and with malice shot Williams. Thus, the record supports several aggravating factors: that the murder was a crime that "involved great violence, great bodily harm"; that the murder involved "acts disclosing a high degree of cruelty, viciousness, or callousness"; that "[t]he defendant has engaged in violent conduct that indicates a serious danger to society"; that "defendant . . . used a weapon at the time of the commission of the crime"; and that "[t]he manner in which the crime was carried out indicates planning, sophistication, or professionalism." (Cal. Rules of Court, rule 4.421(a)(1), (2), (8), & (b)(1).)

*People v. Flores* (2021) 63 Cal.App.5th 368 (*Flores*) is particularly instructive regarding the court's reliance on aggravating factors. *Flores* was decided after the Legislature amended section 1385 to give courts the discretion to strike enhancements but before it further amended section 1385 to enumerate particular mitigating circumstances. Nonetheless, *Flores* remains relevant under *Walker* and *Ortiz*. Its principal holding— that the trial court erred in striking certain enhancements under section 1385 but nonetheless using them to increase the minimum term of a Three Strikes defendant's life sentence (*Flores*, at pp. 373–374, 375)—is not relevant here. But in the course of reaching this holding, the *Flores* court

15

concluded the trial court did not abuse its discretion in declining to strike an enhancement under section 1385, a ruling that is relevant to the present case.

Flores shot and badly injured a man who had angered him by causing a scene at a house that was a hangout for Flores's gang, causing the police to come to the house. (*Flores*, *supra*, 63 Cal.App.5th at p. 374.) Flores later tracked the man down and approached him, armed with a .380 handgun. (*Id*. at pp. 374–375.) As the man tried to explain his version of the incident, Flores "shot him in the neck at point blank range and drove off," seriously injuring the man. (*Id*. at p. 375.)

A jury convicted Flores of attempted premeditated murder and found true an accompanying firearm discharge enhancement alleged under section 12022.53, subdivision (d). (*Flores*, *supra*, 63 Cal.App.5th at p. 375.) The trial court declined Flores's request to strike or reduce this enhancement because of the violent and callous nature of the shooting and imposed a 25-years-to-life sentence for the enhancement. (*Id*. at pp. 375–376.) The court explained, " 'I don't feel that I should exercise discretion to [strike or] lessen that 25 to life [enhancement] because this was a shot right through the neck, and I can't imagine anything more serious. If it had been just a couple of centimeters one way or the other, this would have been a homicide.' " (*Id*. at p. 376.) The judge also noted that Flores had been on parole for only about a month before reoffending. (*Ibid*.)

Flores challenged the court's declination on the grounds that it was "irrational because [the court] placed too much weight on the seriousness of the injury and failed to recognize that even defendants who kill their victims are eligible to have their firearm enhancements stricken" under section 1385 as amended. (*Flores*, *supra*, 63 Cal.App.5th at p. 376.) The court,

Flores contended, blamed him for *almost* killing his victim when it should have treated him with more leniency than if he had.  (*Id.* at pp. 376–377.)

The Fourth Appellate District rejected Flores's argument.  It concluded, "The factors a trial court must consider when determining whether to strike a gun enhancement 'are the same . . . the trial court must consider when handing down a sentence in the first instance.' ([*People v.*] *Pearson* [(2019)] 38 Cal.App.5th [112,] 117, citing Cal. Rules of Court, rules 4.410, 4.421, 4.423.)  Among those factors are whether ' "[t]he crime involved great violence, . . . threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" ' and whether ' "[t]he defendant has engaged in violent conduct that indicates a serious danger to society." ' (*Pearson*, at p. 117.)"  (*Flores*, at p. 377, italics omitted.)

The court concluded, "The focus, rightly so, is on the threat of violence or injury and the degree of danger the defendant poses to the public.  As such, the trial judge acted well within his discretion when he focused on the seriousness of the injury Flores inflicted and the high degree of callousness it takes to shoot someone in the neck at close range over a minor transgression.  And, given that Flores tried to kill the victim after only recently having been released from prison for the very same offense, the judge could reasonably conclude he posed a serious danger to the public."  (*Flores*, *supra*, 63 Cal.App.5th at p. 377, italics omitted.)

The same reasoning applies here, since *Flores* involves circumstances similar to those in the present case.  Poole ignores the plain import of the trial court's statements at the sentencing hearing.  The court was obviously aghast at the callous brutality of Poole's murder of Williams, despite the great weight it afforded to the mitigating circumstances cited by Poole.  It was entitled to consider such factors in determining whether striking the

17

firearm use enhancement under section 1385 was in furtherance of justice. After referring to its discretion, the court declined to exercise it.  We see no reason to second-guess this decision.

### III. DISPOSITION

The order appealed from is affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.